## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ex rel., **BRENDA DECASTRO** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 07-3584** |
| **JACQUET CONSTRUCTION SERVICES, LLC, et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Currently before the Court is the United States' Verified Application for Attachment and Garnishment of Sufficient Assets of Defendants to Satisfy Judgment Upon United States' Claims.[1] After considering the motion, opposition, reply, surreply, record, and applicable law, the court will deny the United States' Verified Application for Attachment and Garnishment of Sufficient Assets of Defendants to Satisfy Judgment Upon United States' Claims.

## I. Background

On June 22, 2007, Brenda deCastro ("deCastro") filed a complaint against defendants Jacquet Construction Services, L.L.C. ("JCS"), Carter Jacquet, Yolanda Jacquet, and Steven Jacquet, alleging that they presented false and fraudulent claims to the United States. These allegedly false and fraudulent claims arise from a contract entered into between JCS and the Federal Emergency Management Association ("FEMA") for the provision of maintenance services on temporary housing units used by individuals after Hurricanes Katrina and Rita.[2] On June 30, 2011, the United

---

[1] Rec. Doc. 44.

[2] Rec. Doc. 1.

1

States filed its notice of election to intervene,[3] and on October 17, 2011, the United States filed a complaint in intervention against JCS, Carter Jacquet, and Yolanda Jacquet (hereinafter collectively referred to as " Defendants") but not against Steven Jacquet.[4]

In its complaint, the United States explains that JCS had a contract with FEMA for the maintenance and deactivation of manufactured homes and travel trailers following Hurricanes Katrina and Rita.[5]  As part of this contract, JCS was required to provide monthly preventative maintenance inspections on the trailers.[6]  These inspections could only be performed when the occupant was present because they required access to the inside of the trailer.[7]  However, if JCS made three attempts to contact the occupant to perform the monthly inspection but could not perform the inspection because the occupant was not available, FEMA would still pay JCS for a monthly maintenance inspection so long as an exterior inspection was performed.[8]

On April 26, 2006, JCS entered into a subcontract with JWK International Corporation ("JWK") to perform maintenance work on the trailers that were the subject of FEMA's contract with JCS.[9]  The United States alleges that JWK failed to perform maintenance inspections and failed to make three attempts to contact the occupants of trailers for many of the trailers assigned to JCS by

---

[3] Rec. Doc. 21.

[4] Rec. Doc. 26.

[5] *Id*. at ¶¶ 24-25.

[6] *Id*. at ¶ 32.

[7] *Id*. at ¶ 48.

[8] *Id*. at ¶ 49.

[9] *Id*. at ¶ 54.

FEMA.[10]  On August 21, 2006, JCS terminated its contract with JWK.[11]  According to the United States, Defendants, through Steven Jacquet, instructed deCastro, the original plaintiff, to create false "3-attempt" forms to be submitted to FEMA for reimbursement for trailers on which JWK failed to perform preventative maintenance inspections, even though Defendants knew that JWK did not make three attempts to contact the occupants.[12]  JCS then submitted these purportedly false forms to FEMA for reimbursement.[13]  The United States alleges that Defendants submitted invoices for 3,803 inspections for June 2006 and 3,672 inspections for July 2006 claiming payment for preventative maintenance inspections or for three-attempts and exterior inspections.  However, the United States alleges that only 4,963 inspections were performed over this two-month period.  Thus, the United States alleges that JCS charged FEMA for 3,703 inspections that were not performed.[14]

Pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), the United States filed an application, under oath, for the attachment and garnishment of Defendants' assets totaling $2,247,690.24 plus interest and costs, alleging this to be the estimated amount Defendants will owe based on the allegedly false claims submitted to FEMA.[15]  To determine this number, the United States multiplied the number of allegedly false claims (3,703) by the amount billed for each claim ($199.36), for a total of $738,230.08.  Because the False Claims Act permits treble damages, the United States then multiplied this number by three to reach $2,214.690.24.  Finally, the United

---

[10] *Id.* at ¶¶ 59-62.

[11] *Id.* at ¶ 62.

[12] *Id.* at ¶¶ 72-77.

[13] *Id.*

[14] *Id.* at ¶ 84.

[15] Rec. Doc. 44.

States contends that it is entitled to $33,000 in penalties under the False Claims Act for the three false invoices submitted by Defendants.

The United States alleges that after it filed its notice of election to intervene against Defendants on June 30, 2011, Yolanda Jacquet withdrew $82,000 from a bank account in Lafayette on August 2, 2011, and Carter Jacquet withdrew $48,000 from a different bank in New Orleans on August 3, 2011.  In response to these withdrawals, the United States filed its application for prejudgment remedies, seeking attachment and garnishment of Defendants' assets.[16]

Defendants filed their opposition to the United States' application for prejudgment remedies on March 9, 2012.[17]  Upon leave of Court, the United States filed a reply memorandum in support of its application[18] and Defendants filed a surreply memorandum in opposition to the United States' application.[19]

## II. Law and Analysis

### A.  Prejudgment Remedies Under the FDCPA

The FDCPA provides "the exclusive civil procedures for the United States to recover a judgment on a debt or to obtain, before judgment on a claim for a debt, a remedy in connection with such claim."[20]  Under the FDCPA, "debt" is defined as:

---

[16] *Id.*

[17] Rec. Doc. 49.

[18] Rec. Doc. 60.

[19] Rec. Doc. 63.

[20] 28 U.S.C. § 3001(a).

(A) an amount that is owing to the United States on account of a direct loan or loan insured or guaranteed, by the United States; or

(B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States.[21]

A "prejudgment remedy" is defined as "the remedy of attachment, receivership, garnishment, or sequestration authorized by [the FDCPA] to be granted before judgment on the merits of a claim for a debt."[22]

The FDCPA also governs the procedure for the United States to obtain a prejudgment remedy.  First, the United States must apply for the prejudgment remedy:

(1) The United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy.

(2) Such application shall be filed with the court and shall set forth the factual and legal basis for each prejudgment remedy sought.

(3)  Such application shall

(A) state that the debtor against whom the prejudgment remedy is sought shall be afforded an opportunity for a hearing and

(B) set forth with particularity that all statutory requirements under this chapter for the issuance of the prejudgment remedy have been satisfied.[23]

The FDCPA then states the available grounds for such relief.  Specifically, the FDCPA states:

(b) Grounds. Subject to section 3102, 3103, 3104, or 3105, a prejudgment remedy

---

[21] 28 U.S.C. § 3002(3).

[22] 28 U.S.C. §3002(11).

[23] 28 U.S.C. § 3101(a).

may be granted by any court if the United States shows reasonable cause to believe
that

> (1) the debtor

>> (A) is about to leave the jurisdiction of the United States with the
>> effect of hindering, delaying, or defrauding the United States in its
>> effort to recover a debt;

>> (B) has or is about to assign, dispose, remove, conceal, ill treat, waste,
>> or destroy property with the effect of hindering, delaying or
>> defrauding the United States;

>> (C) has or is about to convert the debtor's property into money,
>> securities, or evidence of debt in a manner prejudicial to the United
>> States with the effect of hindering, delaying, or defrauding the United
>> States; or

>> (D) has evaded service of process by concealing himself or has
>> temporarily withdrawn from the jurisdiction of the United States with
>> the effect of hindering, delaying, or defrauding the United States.[24]

Moreover, the FDCPA requires that the United States submit an affidavit in conjunction
with its application for prejudgment remedies. Specifically, "[t]he application under subsection (a)
[of 28 U.S.C. § 3101] shall include an affidavit establishing with particularity to the court's
satisfaction facts supporting the probable validity of the claim for a debt and the right of the United
States to recover what is demanded in the application."[25] Additionally, "[t]he affidavit shall state:
(A) specifically the amount of the debt claimed by the United States and any interest or costs
attributable to such debt; (B) one or more of the grounds specified in subsection (b); and (C) the
requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be."[26] Sections

---

[24] 28 U.S.C. § 3101(b)(1).

[25] 28 U.S.C. § 3101(c)(1).

[26] 28 U.S.C. § 3101(c)(2).

3102(b) and 3104(a) address the specific remedies of attachment and garnishment, respectively.

The FDCPA provides for attachment as follows:

> [a]ny property in the possession, custody, or control of the debtor and in which the debtor has a substantial nonexempt interest, except earnings, may be attached pursuant to a writ of attachment in an action or proceeding against a debtor on a claim for a debt and may be held as security to satisfy such judgment and interest and costs, as the United States may recover on such claim.[27]

Further, the FDCPA provides for garnishment as follows:

> [i]f the requirements of section 3101 are satisfied, a court may issue a writ of garnishment against property (excluding earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor in order to satisfy a claim for a debt . . . .[28]

Additionally the FDCPA states, "[o]n the court's determination that the requirements of subsections (a) [application] (b) [grounds] and (c) [affidavit] have been met, the court shall issue all process sufficient to put into effect the prejudgment remedy sought."[29]  The FDCPA also provides defendants an opportunity to challenge prejudgment remedies; however, Section 3101(d) limits the issues that may be addressed by the Court when a defendant challenges prejudgment remedies to:

> (A) the probable validity of the claim for the debt for which such remedy was granted and of any defense or claim of exemption asserted by such person;
>
> (B) compliance with any statutory requirement for the issuance of the prejudgment remedy granted;
>
> (C) the existence of any ground set forth in subsection (b); and
>
> (D) the inadequacy of alternative remedies (if any) to protect the interests of the

---

[27] 28 U.S.C. § 3102(a)(1).

[28] 28 U.S.C. § 3104(a).

[29] 28 U.S.C. § 3101(e).

United States.[30]

Defendants have argued that the United States cannot meet any of these requirements; however, because the Court finds that the United States has not shown the existence of a ground set forth in Subsection 3101(b), the Court will only address the parties' arguments on the issue of grounds.

### B.      Parties' Arguments

In its application for prejudgment remedies, the United States alleges that it has established sufficient grounds under 28 U.S.C. § 3101(b)(1)(B) for prejudgment remedies.  Subsection 3101(b)(1)(B) permits prejudgment remedies when "the United States shows reasonable cause to believe that the debtor has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States."[31]  For support, the United States has attached certified copies of two currency transaction reports ("CTR").  These CTRs show  Yolanda Jacquet's $82,000 cash withdrawal on August 2, 2011[32] and Carter Jacquet's $48,000  cash withdrawal on August 3, 2011.[33]  The United States contends that these CTRs show that Yolanda Jacquet and Carter Jacquet have disposed of or concealed assets and contends that these actions have the effect of hindering the United States' ability to recover the monies lost due to Defendants' conduct.  Specifically, the United States contends that Defendants may continue to conceal their assets or divest themselves of their assets, which would frustrate the United States'

---

[30] 28 U.S.C. § 3101(d)(2).

[31] The United States does not invoke any other provision of 28 U.S.C. § 3101(b)(1) as grounds for the prejudgment remedies.

[32] Rec. Doc. 44-1.

[33] Rec. Doc. 44-2.

ability to recover its losses.

In opposition, Defendants argue that the United States has not met its burden because there is ample evidence to show that the United States would not be prejudiced absent the prejudgment remedies. Specifically, Defendants contend that the financial activity reflected in the CTRs referenced by the United States represents less than three percent of Defendants' net worth.[34] Defendants further contend that the United States has not established a pattern of selling real estate or a pattern of substantial withdrawals and that the activity of which the government complains occurred seven months prior to the date that the United States filed the instant application for prejudgment remedies.

Additionally, Defendants contend that Yolanda Jacquet's $82,000 transaction was the result of cashing a check from the sale of an empty lot in Carencro, Louisiana. Defendants aver that they purchased the lot following Hurricane Katrina with the intention of building a home if another storm struck New Orleans but that they eventually decided to sell the lot. Defendants state that the lot was listed for sale well before the United States elected to intervene.[35] Thus, Defendants contend that this transaction was completely unrelated to the United States' election to intervene.

Further, Defendants state that the FBI began investigating the allegations made by deCastro in 2008, and that Defendants have known about the investigation since that time. Defendants argue that since they learned that the United States was investigating them for the actions alleged in this matter, Defendants have spent nearly $5,000,000 in renovating their properties in the New Orleans

---

[34] Defendants support this contention with an affidavit of Carter Jacquet. *See* Rec. Doc. 51-1 at ¶ 18.

[35] *Id.*

area.[36]  Defendants contend that this activity demonstrates that they have not engaged in a pattern of withdrawing funds and selling assets.

In reply, the United States contends that Defendants' opposition demonstrates that Defendants have taken actions that have the effect of hindering the United States' ability to collect on any judgment ultimately obtained in this matter.  Specifically, the United States argues that when Yolanda Jacquet sold real estate and did not deposit the proceeds in the bank, Defendants concealed these assets.  Further, the United States notes that Defendants have provided no explanation for the source or disposition of the $48,000 that Carter Jacquet withdrew.  Finally, the United States contends that the list of assets submitted by Defendants demonstrates that they do not have sufficient assets to satisfy the judgment, as many of these assets are owned by various business entities.

Defendants respond that the United States failed to address the fact that all of the activity of which the United States complains  occurred seven months before the United States filed its application for prejudgment remedies and that the United States has pointed to no new activity or allegations that occurred in the interim.  Further, Defendants state that it is undisputed that Yolanda Jacquet and Carter Jacquet own all of the companies whose assets they rely upon to demonstrate that they have sufficient assets to pay any judgment that may be imposed against them.  Finally, Defendants again state that they have known of the government's investigation of deCastro's allegations since 2008 and have significantly invested money into their properties since that time, showing that they have not taken actions to hinder the United States.

---

[36] Defendants have attached a chart listing the properties that they own, the purchase price of said properties, and the amount spent on improvements to said properties.  Rec. Doc. 51-5.

## C.      *Analysis*

The Court finds that the United States has not demonstrated that Defendants have shown "reasonable cause to believe that the [Defendants have or are] about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States."[37]  Although the United States is correct that the statute does not require defendants to have intended to defraud the United States,[38] the United States has not shown that the August withdrawals had the necessary effect of hindering, delaying, or defrauding the United States, as required by the statute.  Defendants have correctly noted that the United States has pointed to no activity in the seven months between the withdrawals and the United States' application that would provide grounds for prejudgment remedies.  Further, Defendants have demonstrated that they, through their wholly-owned companies, have sufficient assets to satisfy any judgment that may be rendered against them in this matter.[39]  Finally, Defendants have also shown that they recently have invested significant funds in their local properties,[40] which the Court finds further demonstrates that they have not concealed assets with the effect of hindering the United States.

These facts differentiate this case from the cases cited by the United States where courts have granted prejudgment remedies.  For instance, in *United States v. Teeven*,[41] the United States demonstrated that the defendants (1) placed at least seven properties on the market for sale; (2)

---

[37] 28 U.S.C. § 3101(b)(1)(B).

[38] *See United States v. Teeven*, No. 92-418, 1992 WL 683683, at *7 (D. Del. Aug. 14, 1992) (stating that Section 3101(b) "contains no 'intent' requirement.").

[39] Rec. Doc. 51-1 at ¶ 18; Rec Doc. 51-5.

[40] Rec. Doc. 51-5.

[41] *Teeven*, 1992 WL 683683, at *7.

transferred a property with a value of $339,800, without consideration, to a corporation; (3) mortgaged a property and granted a security interest in the contents of the building; (4) made loans and gifts of cash to third parties; (5) and sold two separate properties.[42]  Similarly, in *United States, ex rel, Doe v. Degregorio*,[43] the United States submitted the affidavit of a federal agent who stated that the defendant had given instructions to sell his and his company's commercial property and that the defendant's phone calls from prison confirmed that the defendant was attempting to liquidate his company's assets."[44]

Unlike these cases, the United States has not presented any evidence in this case that Defendants have engaged in a pattern of selling their property or that they are attempting to liquidate their assets.  The United States simply relies on two cash withdrawals made seven months prior to the United States' application for prejudgment remedies; however, the evidence provided by Defendants demonstrates that these actions have not had the effect of "hindering, delaying, or defrauding the United States."  Therefore, the United States has not demonstrated the existence of grounds for prejudgment remedies under 28 U.S.C. § 3101(b), and the application for prejudgment remedies must be denied.

### III.  Conclusion

The United States has submitted an application for prejudgment remedies, seeking the attachment and garnishment of Defendants' assets with an aggregate value of $2,247,690.24.

---

[42] *Id.*

[43] 510 F.Supp.2d 877 (M.D. Fla. 2007).

[44] *Id.* at 889.

However, the United States has not demonstrated that grounds exist for this Court to grant such prejudgment remedies.  Accordingly;

**IT IS ORDERED** that the United States' Verified Application for Attachment and Garnishment of Sufficient Assets of Defendants to Satisfy Judgment Upon United States' Claims is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants keep the Court apprised of their activities and the activities of their wholly-owned companies which would give rise to any concern regarding their ability to satisfy any judgment in this matter.

**NEW ORLEANS, LOUISIANA**, this __6th__ day of June, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**